## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

**HABAKUK NDZERRE**
506 Cobbler Place
Gaithersburg, MD  20877

       *On his behalf and on behalf of a*
       *classes of similarly situated persons*

    Named Plaintiff,

v.

**LIBERTY POWER CORP., LLC**
1209 Orange Street
Wilmington, DE  19801
<u>SERVE ON:</u>
Corporate Creations Network Inc.,
Resident Agent
2 Wisconsin Circle, #700
Chevy Chase, MD  20815

    Defendant

Case No. ___441430-V___

### CLASS ACTION COMPLAINT
### &
### REQUEST FOR JURY TRIAL

    Plaintiff Habakuk Ndzerre ("Mr. Ndzerre" or "Named Plaintiff"), through his undersigned counsel files this Class Action Complaint pursuant to Md. Rule 2-231, on his individual behalf and on behalf of a class of similar persons against Defendant Liberty Power Corp., LLC ("Liberty Power" or "Defendant"), and says in support:

I.     **Introduction**

1.   Liberty Power knowingly improperly assessed and slammed certain charges against the electrical account of Mr. Ndzerre and the accounts of the putative Class members defined herein as part of its regular and routine practices in the State of Maryland.

1

RECEIVED

DEC 19 2017

Clerk of the Circuit Court
Montgomery County, Md.

2. Unfortunately, electrical customers are sometimes signed up for electricity service without their knowledge or consent, an unscrupulous activity known as "slamming." Slamming involves someone switching your retail electrical provider without your permission or in conformance with the laws established for such solicitations. Electric customers usually do not find out they have been slammed, if they find out at all, until long after the fact.

3. However, in this instance since Liberty Power's knowing acts and omissions discussed herein concealed from Mr. Ndzerre and the putative class members the material information required under Maryland law, his claims asserted herein and the class of the putative class members are tolled until they become reasonably aware that Liberty Power's acts and omissions violate Maryland law. No reasonable person would believe that PEPCO would bill for services and fees that Liberty Power was not entitled to bill for and even after the PSC ruled against Liberty Power that it would continue to disregard the PSC's findings.

4. Previously attempting to resolve his dispute with Liberty Power, Mr. Ndzerre filed a complaint with the Maryland Public Service Commission which found through its administrative process that Liberty Power had in fact violated Maryland law in its relationship with Mr. Ndzerre and improperly slammed his account. In that finding the PSC Order Liberty Power to reimburse Mr. Ndzerre certain sums but it has failed to do so.

5. As a direct and proximate result of its illegal practices, Liberty Power has been unjustly enriched and otherwise damaged the Named Plaintiff and putative class members by retaining sums it is not entitled to retain under Maryland law. As a further result, liberty

Power's actions have unlawfully infected Mr. Ndzerre's and the putative class members' electrical accounts by wrongfully demanding costs it is not entitled to collect.

II.    **The Parties**

6.  Mr. Ndzerre is a resident of Gaithersburg, Maryland in Montgomery County.   He previously resided at the residential address commonly known as 14200 Weeping Willow Drive, Apartment 32, Silver Spring, MD  20906 where he had residential, electric service that is subject to the claims presented herein.

7.  Liberty Power is a Delaware limited liability company with its principal place of business in the State of Florida.

8.  Not named as party to this action, but identified herein is Pepco which delivered electricity to the Named Plaintiff and putative class members and also charged the Named Plaintiff and putative class members on behalf of Liberty Power.

9.  Not named as a party to this action but identified herein is Intelligen Resources LC which acted for a time as Liberty Power's authorized broker in the State of Maryland soliciting persons to acquire its services.

III.    **Jurisdiction and Venue**

9.  Declaratory and injunctive relief are available pursuant to Md. Code Ann., §§ 3-401 – 3-415, and Rule 2-231 (b)(2).

10.  Venue in this Court is proper in that the Defendant transacts business within Montgomery County in relation to Montgomery County residents as part of its purchase of and purported sale of energy and to end-customers, including the Named Plaintiff and some of the putative class members, through the Pepco and other utility's operating the in the

State of Maryland's power and distribution grid.  In addition certain of the acts and damages occurred in Montgomery County, Maryland.

11. This Court has equitable jurisdiction over the claims asserted herein. 9 M.L.E. Equity § 2.

12. This Court has jurisdiction of this matter pursuant to Rule 2-231 in order to facilitate management of multiple similar claims.  Maryland law does not permit class actions to be maintained in the District Court of Maryland.

IV.   **Background Facts Related to Mr. Ndzerre & Defendant**

13. Retail electricity and gas suppliers, like Liberty Power, are licensed by the Maryland Public Service Commission (Commission).

14. The Commission has adopted various consumer protection regulations pertaining to contracting, enrollment,  as well as billing practices and procedures  to prevent misleading and deceptive practices by gas and electric suppliers. (COMAR 20.53 and 20.59)

15. Retail suppliers like Liberty Power must adhere to these regulations in addition to Maryland's general consumer protection laws, including the Telephone Solicitation Act and the Door-t-Door Solicitation Act. These laws prohibit deceptive and misleading actions, and impose certain requirements for solicitations by phone or in person at your home.

16. In general a supplier may solicit a new customer by telephone, in person (door-to-door), or through direct mailings. Sections 14-2201 thru 14-2205 of the Maryland Telephone Solicitation Act (Act) applies to all merchant initiated calls, including electric and gas suppliers, to a residential consumer's telephone. The Act enumerates several exceptions to these requirements; such as if the supplier had a prior business relationship. or the

4

customer purchase is 'pursuant to an examination of a telephone, radio, or print advertisement or other mailing material of the merchant'. Section 14-2203(a) and (b) requires that the 'contract made pursuant to a telephone solicitation ... be reduced to writing and Signed by the consumer' in order for it to be enforceable. If the supplier is exempt from the Act then Commission rules require that the supplier record the buyer's consent, disclose all the material terms of the contract during the call and mail a complete written contract within three (3) days.

17. Supplier disclosures may also be in writing, as in the case of door-to-door solicitation or other written offers. The sales agent must provide consumers with a completed receipt or copy of any disclosure that shows the date of the transaction and the name and address of the supplier. Consumers have the right to rescind a valid door-to-door solicitation contact within three (3) business days of completing the valid transaction and up to three days thereafter

18. Liberty Power does not own generation, transmission or distribution facilities; instead it generates revenues and profits by buying energy from wholesalers and selling it to end-customers like the Named Plaintiff and putative class members.

19. As part of its electronic records, Liberty maintains detailed customer information including but not limited to:

> i.   Specific contact and contract information for individual disclosures provided to its customers;
>
> ii.  Customers' order history information;
>
> iii. The rates paid by its customers and the rates it paid for the electricity purchased by it wholesale;

      iv. Customer's renewal dates, and data regarding a customer's annual electricity consumption.

20. Liberty Power compiles this and other information and data for of its customers using standard, uniform practices and procedures.

21. To conduct business in Maryland Liberty Power retains employees and/or authorized agents or sub-agents to conduct unsolicited door to door sales.  As part of this business enterprise, Liberty power unitizes a standard disclosure which does not comply with the Maryland Door-to-Door Sales Act, Com. Law § 14-301 ("Act") in the following respects:

      i. Liberty Power uses pre-printed disclosure forms that purport to comply with the Act but do not because the information contained on the door-to-door disclosure utilized by Liberty Power (i) does not provide the borrower with the mandatory Notice of Cancelation required by Com. Law § 14-302(2); (ii) provides a standard provision that purports to interfere with, denies, or otherwise misrepresents by omission the buyer's right to right to cancel and rescind the purported contract until such time as Liberty Power complies with the Act's requires in violation of Com. Law § 14-302(4)(6); and (iii) does not contain any representation that the buyer was provided a copy as required by Com. Law § 14-302(1).

      ii. Liberty Power use of pre-printed forms and disclosures for its door to door sales force creates an inherent scheme, plan, or ruse in which it may improperly slam consumers with its services without any notice whatsoever in violation of Com. Law § 14-302(11).

22. On or before January 14, 2013 Liberty Power prepared a completed disclosure for Mr. Ndzerre to sign and purported to have solicited him at the Property to engage in its

services for electricity. The purported disclosure identifies Amanda Staub as its authorized representative.

23. Mr. Ndzerre did not invite Liberty Power to his home and the Property on January 14, 2013. He did not sign any purported disclosure or Door to Door Solicitation with Liberty power, Amanda Staub, or any other person on January 14, 2013 or anything thereafter, with Liberty Power.

24. However, Liberty Power acting upon its illegal and improper disclosure and a forged signature that is not Mr. Ndzerre's signature and was not authorized by him, purported to enroll Mr. Ndzerre into its power services on or about January 14, 2013. Liberty Power concealed this fact from him and he did not have actual knowledge of the scheme until a period of less than three years before the commencement of this action.

25. Liberty Power's pre-printed form used to slam Mr. Ndzerre and improperly enroll him into the Liberty Power's services (i) did not provide the borrower with the mandatory Notice of Cancelation required by Com. Law § 14-302(2); (ii) provides a standard provision demanding an early termination fee of $10.00 per month which interferes with, denies, or otherwise misrepresents by omission the buyer's right to right to cancel and rescind the purported agreement until such time as Liberty Power complies with the Act's requires in violation of Com. Law § 14-302(4)(6); and (iii) did not specific that a copy had ever been given to Mr. Ndzerre as required by Com. Law § 14-302(1).

26. In addition, Liberty Power's use of pre-printed forms and disclosures for its door to door sales force, including Amanda Staub, created an inherent scheme, plan, or ruse in which it may improperly slam consumers with its services without any notice whatsoever in violation of Com. Law § 14-302(11). This conclusion is demonstrated by the purported

7

disclosure's inclusion of the printed name of the purported borrower and date and time the purported disclosure was signed but with an actual signature of the purported buyer (in this case a forged and void signature):

> "By signing below, I confirm that I am at least 18 years old and have the proper authority to enter into this Agreement with Liberty Power."

Habakuk Ndzerre                          1/14/2013 02:46 PM
Customer Name (printed name)             Date

Customer Signature

Liberty Power Representative Name and Agent Number:_____

27. If Liberty Power's scheme, plan, or ruse related to its solicitations and disclosures was a legitimate door to door transaction, the purported disclosures would not have been completed in type face before the purported door to door solicitation because it would be unreasonable to assume that every prospect would sign up to a door to door sales transaction. Instead, in a legitimate transaction all of the blank fields would have been completed at the time of the transaction in handwritten script and not completed in advance in type-written form.

28. Sometime after January 14, 2013 but less than three years before the commencement of this action Mr. Ndzerre became aware that Liberty Power had slammed his account. In the course of his investigation thereafter the purported January 14, 2013 contract was disclosed to him for the first time since it had been concealed by Liberty Power before then and he had no knowledge of what had occurred.

8

29. As part of the purported January 14, 2013 disclosure, any agreement between Mr. Ndzerre and Liberty Power did not become effective until February 5, 2013 and would last for a two year term.

30. On or about December 2, 2014 Liberty Power sent to Mr. Ndzerre a purported renewal notice which automatically renewed his January 14, 2013 disclosure unless he responded by a deadline.

31. Maryland regulations required that Liberty Power as "A supplier shall provide a customer with a notice of the pending renewal of an evergreen contract 45 days before the automatic renewal is scheduled to occur." Md. Code Regs. 20.53.07.08(D)(1).

32. The standard, uniform Options Notice sent by Liberty Power to Mr. Ndzerre did not specify when his purported contract would actually renew but simply stated his purported agreement would end 2/2015. In other words, Liberty Power's standard and uniform practice did not specify an actual expiration date 45 days before the automatic renewal as required by Md. Code Regs. 20.53.07.08(D)(1).

33. Mr. Ndzerre attempted to resolved his complaints about Liberty Power with the Maryland Public Service Commission which considered his claims and the responses from liberty Power and made certain findings of fact and law including:

[continued on next page]

I find that Liberty Power failed to show a valid enrollment; while a signed contract was obtained, however, it does not match the customer signature provided on his Maryland State driver's license, the social security number is incorrect and the printed customer name is electronic therefore, this agreement could not have been completed as per a door-to-door sales. Additionally, Liberty Power made no mention of leaving the Contract Summary with the customer as per the enrollment date of 1/14/13. Therefore, Liberty Power breached its own door-to-door Solicitation Disclosures number two by failing to leave the agreement to allow you the three (3) business days required to change your mind or cancel. Also, your enrollment date was 1/14/2013 your welcome letter that includes all terms and conditions is dated 1/18/2013 four (4) days after the original enrollment; again this verifies that the initial enrollment is invalid and was sent beyond the three day recession period as per COMAR.

Liberty Power also, failed to give you the required 45 days renewal notice as per COMAR 20.53.07.08 D (1) Evergreen Contracts (1) A supplier shall provide the customer with a notice of the pending renewal of an evergreen contract 45 days before the automatic renewal is scheduled to occur and as per Liberty Power's Renewal Notice dated 12/05/2014 it advises you to contact Liberty Power by 12/19/2014 to assure that you remain on the low fixed rate, however, at the top under Options Notice it advises that your agreement ends 2/2015, however, does not specify a specific date in 2/2015 that your electric account would automatically renew to a month-to-month variable rate agreement with no guaranteed savings, thereby making the renewal agreement invalid. A supplier must specify an actual expiration date 45 days prior to the automatic renewal as noted in COMAR as well as Liberty Power's own Terms and Automatic Renewal agreement.

I find that your account has been slammed as per COMAR 20.53.07.08 B(1)(4) C (1) Supplier Contracts, B. Contract Summary; (1) At the time of completion of the contracting process, a supplier shall provide the customer a copy of the executed contract and completed Contract Summary on the form provided by the Commission. (4) If the contract is completed in person, the contract and the Contract Summary shall be reviewed with and provided to a customer by the supplier in hard copy or electronically, and the executed contract and Contract Summary provided to the customer at the time of contracting in hard copy or electronically if the customer consents to electronic disclosures; C. Methods of Contacting (1) A supplier may not enroll a customer using a process that does not require affirmative confirmation by the customer.

34. Liberty Power had the right to appeal the findings made in the previous paragraph but never did.

35. Neither Liberty Power nor PEPCO ever refunded to Mr. Ndzerre the sums collected from him by PEPCO on behalf of Liberty Power which were as a result of Liberty power's illegal slamming of his account. As a result Liberty Power has been unjustly enriched and Mr. Ndzerre was damaged by PEPCO's collection on behalf of Liberty Power of sums it was not entitled to collect.

36. All persons, including licensed electrical supplies like Liberty Power, are expected to know the law. Charging unlawful fees and services to buyers like Mr. Ndzerre based upon unenforceable, illegal contracts in violation of the Door to Door Sales Act is unreasonable and Liberty Power should not be permitted retain the profits from such activities.

10

V.    **Class Allegations**

37. This action is properly brought on behalf of the **Slamming Class** under Rule 2-231.

Named Plaintiff proposes the **Slamming Class** be defined as follows:

> Those persons in the State of Maryland for whom Liberty Power engaged
> to purportedly supply electrical supply services based upon purported, pre-
> printed door to door solicitation using disclosure forms which (i) were pre-
> printed, (ii) did not contain any representation that a copy of the form was
> given to the buyer (i.e. class member), and/or (iii) contains a provision
> demanding certain termination fees if a buyer (i.e. class member) cancels
> or rescinds liberty Power contract.

38. This action is also properly brought on behalf of an **Improper Renewal Class** under

Rule 2-231. Named Plaintiff proposes the **Improper Renewal Class** be defined as

follows:

> Those members for whom Liberty Power automatically renewed for its
> electrical supply services but it failed to specify the a specific renewal
> date.

39. The members of the **Slamming Class** and **Improper Renewal Class** are capable of

being identified without difficult managerial or administrative problems.  Liberty Power

tracks all information about its customers electronically and is able to identify particular

categories of customers from its electronic systems.  In addition, Liberty Power utilizes

standard forms and procedures related to the solicitation of its electrical supply business

by door to door sales people.

40. The **Slamming Class** and **Improper Renewal Class** members are sufficiently numerous

that individual joinder of all members is impractical.  According to public records,

Liberty power has reported to the Public Service Commission that it has provided electrical supply services to hundreds of Maryland buyers throughout the State of Maryland in the last five years preceding the commencement of this action.

41. There are questions of law and fact common to the **Slamming Class** and **Improper Renewal Class** which predominate over any questions affecting only individual members of the **Slamming Class** and **Improper Renewal Class** and, in fact, the wrongs alleged against Liberty Power by the **Slamming Class** and **Improper Renewal Class** members and the remedies sought by **Slamming Class** and **Improper Renewal Class** members against Liberty Power are identical, the only difference being the exact monetary sum to which each **Slamming Class** and **Improper Renewal Class** member is entitled to receive from Liberty Power.

42. The common issues related to the **Slamming Class** members include, but are certainly not limited to:

   i.    Whether Liberty Power is collaterally estopped from any other finding of fact or law based upon the Public Service Commission's findings of fact and conclusions of law related to the Named Plaintiff's complaint against Liberty Power to which Liberty Power took no review or appeal and is now a final order of the PSC;

   ii.   Whether Liberty Power uses standard and uniform door to door contracts with the putative class members that are similar or identical to the ones it purportedly used with the Named Plaintiff;

   iii.  Does the use of forms which violate the Door to Door Sales Act by Liberty Power create enforceable agreements against the Named Plaintiff and putative class members;

12

iv.    Does the use of forms in violation of the Door to Door Sales Act toll the limitations for the putative class members since the forms used by Liberty Power concealed from the putative class members certain rights and material information deemed necessary by the Legislature;

v.     Whether Liberty Power uses standard and uniform door to door disclosures with the putative class members that are similar or identical to the ones it purportedly used with the Named Plaintiff;

vi.    Whether this Court may declare that Liberty Power's practices and policies concerning the assessment of electrical supply through the use of its standard disclosures violated the Door to Dorr Sales Act;

vii.   Whether Liberty Power collected sums from the **Slamming Class** members, including collections through third parties like PEPCO, which were otherwise unfair and deceptive, that it had no right to take under state law;

viii.  Whether Liberty Power should be ordered to disgorge money and profits that it has wrongfully collected based upon the improper assessment of electrical supply services on utility accounts of the **Slamming Class** members since the purported disclosures violate the Door to Door sales Act.

43. The common issues related to the **Improper Renewal Class** include, but are certainly not limited to:

i.     Whether Liberty Power is collaterally estopped from any other finding of fact or law based upon the Public Service Commission's findings of fact and conclusions of law related to the Named Plaintiff's complaint against Liberty

13

Power to which Liberty Power took no review or appeal and is now a final order of the PSC;

ii.   Whether Liberty Power uses standard and uniform renewal notices with the putative class members that are similar or identical to the ones it purportedly used with the Named Plaintiff;

iii.  Does Liberty Power's improper renewal notice in violation of Md. Code Regs. 20.53.07.08(D)(1) which does not specify a the specific renewal date toll the limitations for the putative class members since the forms used by Liberty Power concealed from the putative class members certain rights and material information deemed necessary by the PSC;

iv.   Whether Liberty Power uses standard and uniform renewal notices with the putative class members that are similar or identical to the ones it purportedly used with the Named Plaintiff;

v.    Whether this Court may declare that Liberty Power's practices and policies concerning renewal of electrical supply services through the use of its standard renewal disclosure violates Md. Code Regs. 20.53.07.08(D)(1);

vi.   Whether Liberty Power collected sums from the **Improper Renewal Class** members, including collections through third parties like PEPCO, which were otherwise unfair and deceptive, that it had no right to take under state law;

vii.  Whether Liberty Power should be ordered to disgorge money and profits that it has wrongfully collected based upon the improper assessment of renewed electrical supply services on utility accounts of the **Improper Renewal Class**

members since the purported disclosures violate Md. Code Regs. 20.53.07.08(D)(1).

44. Named Plaintiff's legal and equitable claims are typical and the same or identical for each of the member of the **Slamming Class** and **Improper Renewal Class** and will be based on the same legal and factual theories identified *supra*.

45. Liberty Power's defenses (which defenses are denied) would be typical and the same or identical for each of the member of the **Slamming Class** and **Improper Renewal Class** and will be based on the same legal and factual theories.

46. The Named Plaintiff will also fairly and adequately represent and protect the interests of the **Slamming Class** and **Improper Renewal Class** members. Named Plaintiff has retained counsel experienced in consumer class actions including actions involving unlawful collection and mortgage servicing practices. Named Plaintiff does not have any interests which might cause her not to vigorously prosecute this action or are otherwise adverse to the interests of the members of the **Slamming Class** and **Improper Renewal Class**.

47. Certification of the **Slamming Class** and **Improper Renewal Class** under Rule 2-231(b)(2) for the injunctive and declaratory relief sought and under (b)(3) for the damages claims in that common questions predominate over any individual questions and a class action is superior for the fair and efficient adjudication of this controversy. A class action will cause an orderly and expeditious administration of claims by the **Slamming Class** and **Improper Renewal Class** members, and economies of time, effort and expenses will be fostered and uniformity of decisions will be insured.

15

48. The only individual questions concern the identification of the **Slamming Class** and **Improper Renewal Class** members who are entitled to any sums and profits that Liberty Power is ordered to disgorge as the fruit of its unlawful activities or share in any statutory and actual damages permitted by law against Liberty Power. This information can be determined by a ministerial examination of the Defendant's business records or other sources, which are admissible as an exception to the hearsay rule and as a statement by a party.

49. Plaintiff's claims are typical of the claims of the **Slamming Class** and **Improper Renewal Class** members.

50. Plaintiff will fairly and adequately protect the interests of all **Slamming Class** and **Improper Renewal Class** members in the prosecution of this action. The Named Plaintiff is similarly situated with, and has suffered similar injuries as, the members of the **Slamming Class** and **Improper Renewal Class** he seeks to represent. The Named Plaintiff (i) feels that hhe has been wronged, (ii) wishes to obtain redress of the wrong, and (iii) wants Defendant stopped from enriching itself from illegal fees or otherwise perpetrating similar wrongs on others.

51. The **Slamming Class** and **Improper Renewal Class** members have suffered damages, losses, and harm similar those sustained by the Named Plaintiff and described supra and in the finding of the PSC in response to the Named Plaintiff's complaint to it (which has never been recovered/paid by Liberty Power or anyone else).

52. Because the Defendant concealed from the Named Plaintiff and the **Slamming Class** and **Improper Renewal Class** members material information required under the Door to Door Sales Act and/or the Md. Code Regs. 20.53.07.08(D)(1) in its purported services,

the claims asserted herein by the Named Plaintiff and the putative class members are tolled until a period of less than three years before the commencement of this action when the Named Plaintiff and the putative class members first had actual knowledge of Liberty Power's illegal activities.

COUNT I

MARYLAND UNIFORM DECLARATORY JUDGMENT ACT, CTS. & JUD. PROC. § 3-401 <em>et seq.</em><br>(Individual and Class Declaratory Judgment in Favor of the Named Plaintiff and<br>Slamming Class and Improper Renewal Class Members against Liberty Power)

53. Named Plaintiff incorporates the foregoing allegations.

54. Named Plaintiff seeks a declaration on his individual behalf and on behalf of the Slamming Class members that the Defendant Liberty Power is not entitled to slam or enroll Slamming Class members' utility accounts with its purported services based upon disclosures which violate the Door to Door Sales Act.

55. Named Plaintiff seeks a declaration on his individual behalf and on behalf of the Slamming Class members that the Defendant Liberty Power Door to Door Sales Act disclosures it provided to the Named Plaintiff and Slamming Class members are hereby rescinded and canceled pursuant to the Door to Door Sales Act based upon disclosures which violate the Door to Door Sales Act. Since Liberty Powere never amended those disclosure to comply with the Door to Door Sales Act, the Named Plaintiffs and Slamming Class members' rights to rescind and cancel have never run.

56. Named Plaintiff seeks a declaration on his individual behalf and on behalf of the Improper Renewal Class members that the Defendant Liberty Power is not entitled to renew the Improper Renewal Class members' utility accounts with its purported

17

services based upon a renewal notice which failed to specify the exact renewal date as required by Md. Code Regs. 20.53.07.08(D)(1).

57. Alternatively, Named Plaintiff seeks a declaration that Defendant Liberty Power is not entitled to the assistance of any Maryland utility distributor to enforce any claim for Liberty Power's services related to a **Slamming Class** member based upon its disclosures which violate the Door to Door Sales Act and/or a purported renewal of those services related to an **Improper Renewal Class** member who was not given a proper renewal notice as required by Md. Code Regs. 20.53.07.08(D)(1).

58. Named Plaintiff also seeks a declaration that Liberty Power has not complied with the remedy fashioned by the PSC in response to his complaint to it.

WHEREFORE, Named Plaintiff, individually and on his own behalf, and on behalf of **Slamming Class** and **Improper Renewal Class** members, prays that this Court:

a.     Certify this case as a class action with the Named Plaintiff as class representative and her attorneys as class counsel on behalf of the **Slamming Class** and **Improper Renewal Class** members described herein;

b.     Order and enter a declaratory judgment that Defendant Liberty Power is not entitled to slam or enroll **Slamming Class** members' utility accounts with its purported services based upon disclosures which violate the Door to Door Sales Act;

c.     Order and enter a declaratory judgment that Defendant Liberty Power is not entitled to renew the **Improper Renewal Class** members' utility accounts with its purported services based upon a renewal notice which failed to specify the exact renewal date as required by Md. Code Regs. 20.53.07.08(D)(1).

18

d.      Alternatively, Order and enter a declaratory judgment that Defendant Liberty Power is not entitled to the assistance of any Maryland utility distributor to enforce any claim for Liberty Power's services related to a **Slamming Class** member based upon its disclosures which violate the Door to Door Sales Act and/or a purported renewal of those services related to an **Improper Renewal Class** member who was not given a proper renewal notice as required by Md. Code Regs. 20.53.07.08(D)(1);

e.      Award reasonable attorney's fees, litigation expenses and costs;

f.      Order additional appropriate declaratory relief including disgorgement by Liberty Power of all profits it has realized from the Named Plaintiff, Slamming Class members, and Improper Renewal Class members; and

g.      Provide such other or further relief as the Court deems appropriate.

## COUNT II
### (Individual and Class Claim for Unjust Enrichment on behalf of the Slamming Class and Named Plaintiff Against Defendant)

59. Named Plaintiff incorporates the foregoing allegations.  This claim for common law unjust enrichment is brought by Named Plaintiff on behalf of the **Slamming Class** against Liberty Power.

60. Defendant Liberty Power was not entitled to receive any benefit (including profits) or payments from the Named Plaintiff and **Slamming Class** members as a result of door door purported disclosures which resulted in assessments to the utility accounts of the Named Plaintiff and the **Slamming Class** members.

19

61. At all times relevant and material to this action before the commencement of this action, Liberty Power has known or should have known that is was not permitted to claim it was entitled to access or collect sums based on disclosures which did not comply with the Door to Door Sales Act from the Named Plaintiff and the **Slamming Class** members since it knew the law governing its activities and simply disregarded the law.

62. Due to its knowledge, as described above, Liberty Power had an appreciation that it was not entitled to receive the benefits it was collecting from the Named Plaintiff and **Slamming Class** members that flow from the purported services it assessed on their accounts and sought reimbursement from PEPCO and other distributors for the expense.

63. The acceptance and retention by Liberty Power of any sums received as a result of the illegal door to door disclosures charged by it against the Named Plaintiff's and **Slamming Class** members' accounts under such circumstances is inequitable since Liberty Power did not have the legal right to even demand or collect such payments in the first instance in the manner it sought to collect them—this conclusion is just and proper even though Liberty Power might have otherwise collected the alleged fees in any other state since Maryland has since the Door To Door Sales Act not permitted the assessment of such services unless the disclosures provided certain material information which Liberty knowingly omitted.

64. The amounts accepted and charged by Liberty Power from the Named Plaintiff and the **Slamming Class** members are liquidated amounts.

WHEREFORE, Named Plaintiff and **Slamming Class** members pray that this Court:

a.     Certify this case as a class action with the Named Plaintiff as class representative and her attorneys as class counsel on behalf of the **Slamming**

20

Class members described herein;

b.    Grant a money judgment and order Defendant Liberty Powerto disgorge and pay to the **Slamming Class** members all amounts it has collected from the **Slamming Class** members and the benefits it has realized as a result of collecting illegal sums based upon improper disclosures in a sum in excess of $75,000.00;

c.    Award prejudgment interest on the amounts collected by Defendant Liberty Power;

d.    Award reasonable attorney's fees, litigation expenses and costs to the extent allowed by law; and

e.    Provide such other or further relief as the Court deems appropriate.

## COUNT III
### (Individual and Class Claim for Unjust Enrichment on behalf of the Improper Renewal Class and Named Plaintiff Against Defendant)

65. Named Plaintiff incorporates the foregoing allegations. This claim for common law unjust enrichment is brought by Named Plaintiff on behalf of the **Improper Renewal Class** against Liberty Power.

66. Defendant Liberty Power was not entitled to receive any benefit (including profits) or payments from the Named Plaintiff and **Improper Renewal Class** members as a result of an automatic renewal notice which failed to specify renewal date as required by Md. Code Regs. 20.53.07.08(D)(1).

67. At all times relevant and material to this action before the commencement of this action, Liberty Power has known or should have known that is was not permitted to claim it was

21

entitled to access or collect sums based renewal notices which did not specify the renewal date as required by Md. Code Regs. 20.53.07.08(D)(1) from the Named Plaintiff and the **Improper Renewal Class** members since it knew the law governing its activities and simply disregarded the law.

68. Due to its knowledge, as described above, Liberty Power had an appreciation that it was not entitled to receive the benefits it was collecting from the Named Plaintiff and **Improper Renewal Class** members that flow from the purported services it assessed on their accounts and sought reimbursement from PEPCO and other distributors for the expense.

69. The acceptance and retention by Liberty Power of any sums received as a result of the illegal renewal notices utilized by it against the Named Plaintiff's and **Improper Renewal Class** members' accounts under such circumstances is inequitable since Liberty Power did not have the legal right to even demand or collect such payments in the first instance in the manner it sought to collect them—this conclusion is just and proper even though Liberty Power might have otherwise collected the alleged fees in any other state since Maryland has established precise requirements for renewals, i.e. Md. Code Regs. 20.53.07.08(D)(1), which Liberty Power failed to follow.

70. The amounts accepted and charged by Liberty Power from the Named Plaintiff and the **Improper Renewal Class** members based on its improper renewals in violation of Md. Code Regs. 20.53.07.08(D)(1) are liquidated amounts.

WHEREFORE, Named Plaintiff and **Improper Renewal Class** members pray that this Court:

a.    Certify this case as a class action with the Named Plaintiff as class

22

representative and her attorneys as class counsel on behalf of the **Improper Renewal Class** members described herein;

b.     Grant a money judgment and order Defendant Liberty Powerto disgorge and pay to the **Improper Renewal Class** members all amounts it has collected from the **Improper Renewal Class** members and the benefits it has realized as a result of its improper renewals in violation of Md. Code Regs. 20.53.07.08(D)(1) a sum in excess of $75,000.00;

c.     Award prejudgment interest on the amounts collected by Defendant Liberty Power;

d.     Award reasonable attorney's fees, litigation expenses and costs to the extent allowed by law; and

e.     Provide such other or further relief as the Court deems appropriate.

### COUNT IV
### (Individual and Class Claim under the Maryland Door-to-Door Sales Act, Com. Law § 14-301, *et seq.* on behalf of the Slamming Class and Named Plaintiff Against Defendant)

71. Named Plaintiff incorporates the foregoing allegations. This claim for state statutory claims under the Door-to-Door Sales Act, Com. Law § 14-301, *et seq.* is brought by Named Plaintiff on behalf of the **Slamming Class** against the Defendant Liberty Power.

72. Liberty power is engaged in the business of selling consumer services by door to door means throughout the State of Maryland as described in Com. Law § 14-301.

73. In furtherance of that business Liberty Power claimed, directly and indirectly, that it was entitled to assess, charge, and collect from the Named Plaintiff and the **Slamming Class**

23

members electrical transmission services through the **Slamming Class** members' utility accounts with PEPCO and other electric distributors in the State of Maryland based upon door to door disclosures which violated Com. Law § 14-302 as described herein.

74. As a result of Liberty Power's violations of the Com. Law § 14-302 as described herein, Named Plaintiff and the **Slamming Class** members' accounts were improperly slammed and assessed with Liberty Power's claims for sums due but were not authorized pursuant to the terms and conditions required by the Door to Door Sales Act.

75. Liberty Power's use of uniform disclosures described herein concealed from the Named Plaintiff and the **Slamming Class** members the damages and losses they incurred until a period of less than three years before the commencement of this action. The uniform and standard disclosures utilized by Liberty Power proximately caused the Named Plaintiffs and **Slamming Class** members to pay sums never authorized or properly disclosed pursuant to the Door to Door Sales Act.

76. Named Plaintiff has been damaged as described above. The **Slamming Class** members have suffered similar damages.

WHEREFORE, Named Plaintiff and **Slamming Class** Members pray that this Court:

a. Certify this case as a class action with the Named Plaintiff as class representative and her attorneys as class counsel on behalf of the **Slamming Class** members described herein;

b. Grant a money judgment in favor of the Named Plaintiff and the **Slamming Class** members and against Liberty Power for violations of the Door to Door Sales Act, as described herein, in such amount as to be determined at trial and for purposes of a sum certain directly related to improper assessment of charges and fees by Liberty

24

Power against the Named Plaintiff's and **Slamming Class** utility accounts, subject

to further discovery as to the size of the class, the amount sought on behalf of the

class is in excess of $75,000.00;

c. Award reasonable attorney's fees, litigation expenses and costs pursuant to COM.

LAW § 14-304; and

d. Provide such other or further relief as the Court deems appropriate.

**COUNT V**

**(Individual and Class Claim under the Maryland Consumer Protection Act,
COM. LAW, § 14-201, *et seq.* ("MCPA") on behalf of the Improper Renewal Class
and Named Plaintiff Against Defendant)**

77. Named Plaintiff incorporates the foregoing allegations. This claim for state statutory
claims under the MCPA is brought by Named Plaintiff on behalf of the **Improper
Renewal Class** against the Defendant Liberty Power.

78. The consumer services described herein by Liberty Power to the Named Plaintiff and the
**Improper Renewal Class** are governed by the MCPA.

79. Section 13-303 prohibits unfair or deceptive trade practices in the sale of consumer
services like those subject to this action by Liberty Power.

80. The Maryland Consumer Protection Act defines unfair or deceptive trade practices to
include, inter alia, the following:

(a) False, falsely disparaging, or misleading oral or written statement, visual
description or other representation of any kind which has the capacity, tendency or
effect of deceiving or misleading consumers; and (b) Failure to state a material fact
if the failure deceives or tends to deceive. Md. Code Ann., Com. Law § 13-301(1)
and (3).

25

81. Liberty Power has violated the MCPA in its relationship with the Named Plaintiff and the **Improper Renewal Class** members by unfairly or deceptively renewing their purported agreements with it by omitting material information required in the renewal notices as stated in Md. Code Regs. 20.53.07.08(D)(1)—i.e. a specific renewal date. This omission infected the Named Plaintiff's and **Improper Renewal Class** members' utility accounts with PEPCO and other distributors from whom Liberty Power improperly assessed and collected sums against the Named Plaintiff's and **Improper Renewal Class** members.

82. PEPCO and the other distributors from whom Liberty Power acted to collect through, relied upon Liberty Power's representations that it had a legal right to collect from the Named Plaintiff and the **Improper Renewal Class** members. In turn, the Named Plaintiff and the **Improper Renewal Class** members also relied by paying their bills from PEPCO and the other distributors utilized by Liberty Power to collect.

83. **Liberty Power** made materially false, misleading oral or written statements, omissions, or other representations related to the status of the Named Plaintiff and the **Improper Renewal Class** members' accounts as described herein in violation of Md. Code Ann., Com. Law § 13-301(1)(3).

84. Had Liberty Power not acted unfairly and deceptively, Named Plaintiff and the **Improper Renewal Class** members would not have suffered any injury or losses described herein. Liberty Power's conduct and omissions, as set forth above, had the capacity, tendency or effect of deceiving and misleading Named Plaintiff and the **Improper Renewal Class** members as well.

WHEREFORE, Named Plaintiff and **Improper Renewal Class** Members pray that this Court:

a. Certify this case as a class action with the Named Plaintiff as class representative and her attorneys as class counsel on behalf of the **Improper Renewal Class** members described herein;

b. Grant a money judgment in favor of the Named Plaintiff and the **Improper Renewal Class** members and against Liberty Power for violations of the MCPA, as described herein, in such amount as to be determined at trial and for purposes of a sum certain directly related to improper renewals by Liberty Power against the Named Plaintiff's and **Improper Renewal Class** utility accounts, subject to further discovery as to the size of the class, the amount sought on behalf of the class is in excess of $75,000.00;

c. Award reasonable attorney's fees, litigation expenses and costs pursuant to COM. LAW § 13-408; and

d. Provide such other or further relief as the Court deems appropriate.

Respectfully Submitted,

Phillip R. Robinson
Consumer Law Center LLC
8737 Colesville Road, Suite 308
Silver Spring, MD  20910
(301) 448-1304
phillip@marylandconsumer.com

*Counsel for the Plaintiff and* **Slamming Class** and **Improper Renewal Class.**

27

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury.

Respectfully Submitted,

Phillip Robinson